In an action inter alia to recover damages for fraud, defendant appeals from a judgment of the Supreme Court, Nassau County, entered April 25, 1974, which is in favor of plaintiff in the amount of $75,000, upon a jury verdict. Judgment affirmed, without costs or disbursements. The major, overriding issues were whether defendant had committed a fraud in his application for automobile liability insurance and whether plaintiff had *646 waived any claim for fraud. In our opinion, the determination of those issues could not be made as a matter of law (see Reliance Ins. Co. v Daly, 38 AD2d 715). The evidence presented questions of fact and issues of credibility and was sufficient to warrant the jury verdict against defendant. We find that the trial was thoroughly, fairly and professionally conducted by the attorneys and the Trial Judge and that there is no basis for disturbing the verdict. Cohalan, Acting P. J., Hargett and Hawkins, JJ., concur; Damiani, J., dissents and votes to reverse the judgment and dismiss the complaint, with an opinion, in which Shapiro, J., concurs. Damiani, J. (dissenting). In this action to recover damages for alleged fraud and to partially reform an automobile liability insurance policy, the plaintiff insurance company has recovered a $75,000 judgment against the defendant, after a jury trial. Although the record on appeal is voluminous, it presents two basic issues: Did defendant-appellant Daly procure an automobile insurance policy from plaintiff by fraudulently omitting to inform it that he had had four convictions (for moving violations) within the 39 months prior to the application, and, if he committed such fraud, whether the carrier waived the assertion of the claim of fraud. Various acts of waiver by the plaintiff are alleged to have taken place: e.g., after receiving notice of the convictions (a) covering a new car on the policy; (b) making disability payments to Daly; (c) defending a wrongful death action against Daly without having disclaimed or reserved rights; and (d) issuing a notice that the policy would expire at the end of its term, etc. Defendant, James C. Daly, a lawyer in his late twenties specializing in taxation, sought to obtain a new automobile liability policy through William F. Glacken, Inc., an agent of the plaintiff. On September 28, 1967 the defendant came into the Glacken office with what was, in effect, an application signed by him in blank. Glacken official Leon Constant then filled it out on the basis of questions addressed by him to the defendant. Constant indicated that the defendant had no convictions for moving traffic violations during the 39 months prior to the proposed October 31, 1967 effective date of the new policy. Actually the defendant had four convictions during that period; he was fined $5 for each of the first three convictions and $25 for the fourth. None of these convictions had occurred within the 18 months prior to the application, a fact which Constant was aware of from the defendant’s "clean” automobile driver’s license. In fact, the defendant’s last conviction had occurred on June 10, 1965, more than two years and three months, or 21 Vi months, prior to the application. Upon being questioned as to whether he had any convictions within the 39-month period, the defendant did not say he had none. Instead he expressly stated that he had some, but that he thought they were beyond the 39-month period, but he wasn’t sure. Constant claims that he told Daly to check this out. Daly denies this and asserts that Constant said that the Glacken agency or the Reliance Insurance Company would check it out. In any event, Constant, who had indicated "no” as to traffic convictions within the 39-month period, left the answer in that form; the application was sent by his firm to Reliance without further change. Reliance then ordered its own investigation, but failed to turn up any convictions; it thereupon issued the policy. There appears to be no reason for Reliance not having uncovered the violations prior to its issuance of the policy, but it appears that the application, as received by Reliance, contained a "B” prefix to defendant’s operator’s license number when actually it should have been "D”. However, this error was made by Constant and not by the defendant. In addition, it is clear that the plaintiffs investigating service was aware of the correct license number. Further, Reliance appears to have had learned the correct license number *647 when it requested the motor vehicle bureau search prior to its issuance of the policy. On January 14, 1968, while Daly was driving his vehicle, it struck a traffic light support pole, causing a passenger to sustain injuries which resulted in his death. In February, 1968 the plaintiff discovered the record of Daly’s moving traffic convictions. It nevertheless defended the resulting wrongful death action. However, in February, 1969 it brought this action against Daly for reformation of the contract of insurance, seeking to reduce the coverage to the statutory minimum amounts, i.e., $10,000 and $20,000. A stay of this action was obtained by the defendant. The wrongful death action was subsequently settled for $175,000. The plaintiff then served an amended complaint in the present action which contained a second cause of action to recover $200,000 for damages sustained because of Daly’s alleged fraudulent misrepresentations. Thus, the complaint contains two causes of action. The first (to reduce the coverage to the statutory minimum) was dismissed on motion for summary judgment prior to trial. The second is for damages for fraud and its core allegations are: "6. That preliminary to the issuance of said policy the defendant completed at the request of the plaintiff, a so-called safe drivers application in which the defendant set forth his New York drivers license number and denied that he had any traffic violations during the thirty-nine months preceding the month in which the policy was to become effective. 7. That in fact the license number supplied was fraudulently misrepresented and was not the true license number of the defendant and additionally the denial of traffic convictions was in fact untrue and fraudulently misrepresented in that the defendant had at least four traffic convictions in the thirty-nine months preceding the proposed inception date of the policy. * * * 13. That on the faith of the aforementioned false representations, and each of them, and relying implicitly on the representations of the defendant, as aforesaid, and believing the same to be true, plaintiff issued to the defendant the automobile liability insurance policy aforementioned” (emphasis supplied). Daly’s answer denies the fraud and sets forth 10 affirmative defenses, the main themes of which are waiver, estoppel and insurer negligence. He alleged, for example, plaintiff’s negligent failure within a reasonable time to discover the alleged fraud and to notify him that it would charge him with fraud; plaintiff’s issuance of the policy after it had full opportunity to discover the facts—suggesting that it had issued the policy with full knowledge of the "concealed” facts; plaintiff’s coverage of a newly acquired automobile after discovery of the fraud; that seven months after discovery of the "fraud” the carrier (in Sept., 1968) sent out a notice of cancellation and/or expiration, thus "affirming” the policy; plaintiff’s settlement of the wrongful death action; and plaintiff’s negligent failure to properly investigate the wrongful death action. After the trial, the jury found in favor of Reliance, awarding it $75,000. The defendant’s first contention is that the plaintiff failed to sustain its burden of proof of his fraud and that the Trial Judge erred in failing to dismiss the complaint. This argument has several components: (1) It is asserted that the filling in of the incorrect prefix in the license number was done by Constant and Edward Glacken and not by Daly. This contention is undeniably correct, for the record makes it crystal clear that Daly produced his driver’s license for Constant’s inspection and that the correct number was there for Constant to see. Moreover, the plaintiff seems to have furnished the correct prefix number to its investigating service, Reliable Reporting Service, whose prepolicy issuance reports to the plaintiff contained the correct number. Thus, with respect to the charge of furnishing the plaintiff with an incorrect license number, the allegation of fraud totally fails. (2) With respect to the *648 four unreported convictions, the defendant correctly argues that Constant admitted that he made the error in checking "no” as to traffic convictions on the application form. More importantly, Constant testified that Daly never stated that he had no convictions within the 39-month period; Daly had merely said that "he wasn’t sure”. Further, Constant (not Daly) sent the plaintiff the application marked "no” convictions. This proof compels the conclusion that if plaintiff was misled, it was due to the negligence of its own agent and not by reason of any fraud on the part of Daly. That is the crux of this case. The Glacken firm was the plaintiff’s agent, and where an agent of an insurer negligently omits or misstates material facts, the omission or negligence is vicariously that of the insurer and does not serve to relieve it of its obligations under the policy. The plaintiff also failed to prove the allegation in its complaint that it relied "implicitly” on the defendant’s representations. The testimony of Mr. Brazzano, the plaintiff’s underwriter, plainly indicates that the plaintiff did not rely upon Daly’s application, but instead relied upon its own investigation, a motor vehicle bureau search and the search made by Reliable Reporting Service. Finally, the plaintiff’s proof on the issue of materiality, at best, was weak. For example, the policy contains a point system used for the setting of premium rates. The plaintiff’s underwriter admitted that none of the four convictions was such that it would even warrant the assigning of any points toward an increase in premiums. Despite that fact, he stated, in conclusory fashion, that the plaintiff would not issue a policy, if the applicant had two or more moving violations. There is also merit to the defendant’s contention that the complaint should have been dismissed on the ground of waiver, as alleged in the seventh affirmative defense set forth in the answer, as follows: "That the plaintiff issued an amendment 'of Automobile Endorsement’ effective June 12, 1968, and charged and accepted a premium therefor covering a newly acquired automobile which was many months after the plaintiff knew of the alleged errors in the application and with full knowledge of all the facts concerning the defendant and his operating record and by reason thereof has waived any errors in said application and its right, if any, to the relief sought in the complaint herein and by reason thereof is estopped therefrom.” The policy became effective on October 31, 1967. The accident occurred on January 14, 1968. Reliance received a printout dated February 2, 1968, prepared by the motor vehicle bureau, which lists the defendant’s four minor convictions. On February 8, 1968 the defendant was served with the summons and complaint in the wrongful death action. While it is true that the plaintiff was obliged to assume the defense of the wrongful death action, and may not have been required to give the defendant a "reservation of rights” letter or a notice of disclaimer (Reliance Ins. Cos. v Daly, 38 AD2d 715), it, nevertheless, with full knowledge of the alleged fraud and the pending wrongful death action, performed acts which constituted a waiver of the alleged fraud. Effective June 12, 1968 it issued an indorsement to the instant policy, thereby covering the defendant’s newly acquired automobile, and charged and accepted the additional premium therefor, and issued the FS-1 form required by the Department of Motor Vehicles in order to register the new car. In 1968 it also paid the defendant’s hospital and medical bills, the defendant’s automobile loss and his disability claim. This action was thereafter commenced on February 14, 1969. The fact that Reliance insured the defendant’s newly acquired car under this very policy after the fatal accident does more than disprove plaintiff’s allegations as to the "materiality” and its "reliance” upon the defendant’s alleged fraud in failing to disclose the traffic infractions. Together with the other acts enumerated *649 above, it was a recognition by the insurer of the continued validity of the policy and of its intention to continue it in full force and effect. It was inconsistent with its later claim of nonliability under the policy and may be said to have constituted a waiver of its right to maintain this action in fraud. In this connection the defendant also complains that while the trial court permitted this defense to stand, it charged the jury only generally on the subject of waiver, and never charged the contents of the seventh affirmative defense. Although the defendant did not except to the charge given on the subject of waiver, the fact remains that the charge was general and did not refer to the many pieces of waiver evidence presented or adduced by Daly. In my judgment the defendant was entitled to a dismissal of the complaint because of the plaintiff’s failure to prove fraud on his part and, in any event, the plaintiff waived its right to assert such claim. Shapiro, J., concurs in the dissenting opinion.